[No. 30099. Department One. April 10, 1947.]

R. M. TATE, *Appellant,* v. R. H. SUTHERLAND, *Respondent.*[1]

*Geo. W. Young,* for appellant.

*F. L. Stotler* and *Claude K. Irwin,* for respondent.

[1]Reported in 179 P. (2d) 313.

SIMPSON, J.—Plaintiff instituted this action to recover for an agreed value of peas sold and delivered to defendant. After trial to the court, sitting without a jury, the court made findings of fact and conclusions of law. Thereafter, based upon its findings and conclusions, the court entered judgment in favor of defendant. Plaintiff, appealing to this court, makes nine assignments of error, which attack the findings and judgment of the trial court.

We shall set out the pertinent undisputed facts and the testimony of some of the witnesses: Appellant was a farmer, living near Colfax, and respondent was doing business in that city. April 3, 1944, the parties entered into a contract drawn by respondent. The essential portions of the contract provided that appellant would, during the year 1944, plant, cultivate, grow, and harvest, in a good and farmerlike manner, one hundred forty acres of peas, upon a farm in Whitman county, known as the Art M. Richardson place. He also agreed

". . . to deliver the peas in bulk to the owner's plant at Colfax, Washington, or in sacks f.o.b. Colfax, Washington, on or before September 30th, 1944, weather permitting; to pay all federal grading expense; to furnish the necessary chemicals and other materials for growing the peas; to prevent weevil damage at his own expense to the best of his ability; to keep said peas free and clear of all liens, mortgages, pledges or other encumbrances; to grow, harvest and deliver to the owner, mature, sound and dry peas."

The contract also provided that:

"The owner shall be privileged to withhold from any payments made hereunder, the amount of any lien, rent or charge existing on or asserted against said peas."

Respondent was compelled by the terms of the contract to furnish appellant seed of one hundred thirty pounds per acre, the same to be repaid pound for pound. He further agreed to pay $4.60 per hundred pounds for peas delivered by appellant, based upon a grade obtained from Federal inspectors.

Respondent furnished the seed as agreed, and appellant sowed all but twelve sacks of it. At harvest time, appellant arranged with Art Richardson, the owner of the land upon which the peas were grown, to do the harvesting with his combine. Mr. Richardson completed his contract. During the harvesting, appellant sewed sacks on the Richardson combine for several days. On or about August 12, 1944, appellant hauled sacks to the warehouse designated by respondent and then engaged a hauler to transport the balance of the crop, at a price of nineteen cents per sack. On or about August 22nd, respondent caused two hundred forty sacks to be hauled at an agreed price of thirty cents per sack. The balance of the crop was delivered by appellant's employee. August 17, 1944, Richardson filed a lien against the crop of peas, and three days thereafter respondent paid the lien, and took indemnity back from the harvester. Richardson was paid twelve dollars per acre for his work.

Appellant contends that Richardson so operated the harvesting machine that it cracked and split the peas to his damage, and therefore the lien should not have been paid in full. Appellant's evidence showed that the peas, when harvested, were cracked or split, thus depreciating their value. His evidence, presented by expert witnesses testifying by way of answer to hypothetical questions, showed that the cracking could have been accomplished by running the threshing motor too fast, by having the concaves set too tight, or by the use of an overhead conveyor. Further, that the cracking could have been obviated by slowing down the motor, taking out the concave teeth, putting in sickle sections, and arranging an undershot, instead of an overshot, elevator.

Opposed to this, evidence was supplied by respondent's witnesses, including Mr. Richardson and Vint Barr, who operated the combine. These witnesses testified that the machine had in it only an undershot elevator; that the machine was not equipped with concave teeth, but with section knives, and that they were dropped "clear down all the time"; further, that the motor was slowed down during

the time appellant's peas were being harvested. Respondent's evidence showed that appellant sewed sacks on the combine, and that anyone working in that position could ascertain whether the peas were cracking or splitting, and that appellant did not complain about the manner in which the peas were harvested.

Appellant objected to the allowance to Richardson of twelve dollars per acre for harvesting. His evidence showed that there was no contract made with Richardson concerning the price to be charged, and that the reasonable charge should have been much less than twelve dollars per acre. The evidence produced by respondent (and it included testimony of one disinterested witness) was to the effect that, when the combine arrived at appellant's farm, he was told by Richardson that the price for harvesting was twelve dollars per acre, and that appellant would be paid fifteen dollars per day for sewing sacks.

It is next contended by appellant that respondent overpaid the man who hauled two hundred forty sacks of peas to the warehouse. There was evidence which showed that the charge made by the person employed by respondent was one usually made in the vicinity. Appellant was not in a position to complain. He had left his home and could not be found. Some rain had fallen, and the sacked peas had been in the field for two weeks. The crop had been mortgaged in defiance of the provisions in the contract, and a lien had been filed against the peas.

Appellant presses upon us error of the trial court in overruling his oral demurrer made at the beginnning of the trial, to paragraphs Nos. 3 and 5 of respondent's first affirmative defense, which read:

"(3)  That because of the neglect and failure of plaintiff to deliver certain of said peas so raised by him, defendant was compelled to procure a portion thereof to be hauled and delivered, as provided in said contract, and amounting to the reasonable sum of $145.16, and at request of plaintiff, the defendant paid plaintiff's hauler, Henry Rutz, $72.00 for such purpose."

"(5)  That plaintiff employed one Art M. Richardson to harvest said peas, and he performed services in such har-

vesting amounting to the reasonable sum of $1680.00; that plaintiff failed and neglected to pay for said harvesting, and on August 17th, 1944, said Art M. Richardson filed his lien upon said peas for such harvesting, in said sum, which said lien was, on said August 17th, 1944, recorded in Book J of Liens, page 501 thereof, records of the auditor's office of Whitman County, Washington, and said lien is still a matter of record and has not been released; and thereafter defendant paid to said Art M. Richardson, the sum of $1680.00 upon said lien, upon the promise and agreement upon the part of said Art M. Richardson to hold harmless defendant in payment of said sum to him; and in the event that said lien is disputed by plaintiff, then said Art M. Richardson is a necessary and proper party defendant in this action."

The contract was attached and made a part of the answer.

█ Respondent argues that the demurrer was not timely made. We are of the opinion, however, that appellant had the undoubted right to attack the answer at any time before the taking of evidence. *Joyner v. Seattle,* 144 Wash. 641, 258 Pac. 479; *Wiegardt v. Becken,* 8 Wn. (2d) 568, 113 P. (2d) 60; *State ex rel. Walton v. Superior Court,* 18 Wn. (2d) 810, 140 P. (2d) 554; *Jensen v. Jensen,* 20 Wn. (2d) 380, 147 P. (2d) 512.

█ The contents of the answer gave good and sufficient reasons for the actions of respondent in contracting and paying for a portion of the hauling, and in satisfying the lien filed against the crop by the harvester. The contract was one of bailment. Respondent owned the peas and had a perfect right under the contract to protect his property to the extent of using every reasonable effort to care for that property. There was no duty on his part to sit by and suffer the crop to be depreciated in value, or have the harvest lien foreclosed.

"Since, as has been pointed out, where the bailment is lucrative and for use by the bailee of the property, generally the bailor is responsible for necessary extraordinary expenses in preserving the condition of the property. A fortiori, where the bailee is compelled, for the sake of pre-

serving the subject of the bailment, to call in the services of a third person, the bailor is liable therefor to such person." 6 Am. Jur. 405, Bailments, § 319.

The court did not commit error in overruling the demurrer.

■ Finally, appellant contends that the court was indifferent to the evidence relating to the reasonable value of harvesting and of damages by the harvester's negligence. The court did say at one time that he thought the evidence was immaterial. However, the court found that the price paid by respondent was reasonable. We cannot assume in so finding that the court refused to consider the evidence. The reading of the statement of facts demonstrates that the court did consider all the evidence, and gave appellant every opportunity to present evidence concerning every question advanced during the trial. Some of the evidence is in dispute. The court saw and heard the witnesses testify, and was in a much better position to ascertain the credibility and the weight to be given to their statements than we who consider the typewritten record.

It is our conclusion that the parties to this litigation were given a fair and impartial trial, and that the court's conclusion was correct.

The judgment is affirmed.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and ABEL, JJ., concur.